**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**

FILED
2008 Aug 25 PM 04:33
CLERK U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 07-30752 |
| | ) | |
| Timothy A. Feasby, | ) | Chapter 7 |
| | ) | |
|         Debtor. | ) | Adv. Pro. No. 07-3138 |
| | ) | |
| Holt Texas, Ltd., | ) | Hon. Mary Ann Whipple |
| | ) | |
|         Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Timothy A. Feasby, | ) | |
| | ) | |
|         Defendant. | ) | |
| | ) | |

### MEMORANDUM OF DECISION

    This adversary proceeding is before the court for decision after trial on a complaint filed by Plaintiff Holt Texas, Ltd., dba Holt-CAT ("Holt-CAT") to determine dischargeability of a debt owed to it by Defendant/Debtor Timothy A. Feasby that arises out of various agreements between Holt-CAT and Feasby Lakes Construction & Development ("Feasby Lakes Construction") for the lease of certain excavating equipment that were guaranteed by Defendant. According to Holt-CAT, in extending credit to Feasby Lakes

Construction under the lease agreements, it relied on false statements contained in an Application for Financing signed by Defendant. Plaintiff alleges that the debt should be excepted from discharge under 11 U.S.C. § 523(a)(2)(B).[1]

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising under title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings to determine dischargeability of debts are core proceedings that the court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(I).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Defendant is entitled to judgment in his favor on the complaint.

## FINDINGS OF FACT

Holt-CAT is an equipment sale and leasing company located in Texas. Defendant, an Ohio resident, was the sole proprietor of Feasby Lakes Construction. After graduating from high school and before starting his own business, Defendant worked for a glass company for seventeen years as a glazer. He had no formal education or training after high school. After leaving the glass factory, he worked in the construction industry. However, in 1998, he started a small excavation business known as Feasby Lakes Construction. His business consisted of small residential jobs, such as excavating for ponds.

In 2005, due to a slow down in his work, he advertised in a water skiing magazine. He was contacted by Richard Voss, a developer in Texas, and was invited to bid on a project for a ski lake development. Although he had never done business in Texas and had never attempted such a large project, he submitted a bid, which was accepted, of $378,000. He did not own the equipment he would need for the job and so arranged to lease the equipment from Good Equipment in Elida, Ohio. Because a loading dock, which was not available at the job site, was needed to unload the equipment, Defendant, at the instruction

---

[1] In its complaint, Plaintiff also asserts that the debt owed to it by Defendant is nondischargeable under § 523(a)(2)(A). However, at trial, Plaintiff proceeded under § 523(a)(2)(B) only.

of the Good Equipment sales representative, arranged to have the equipment delivered to the loading docks at Holt-CAT in Corpus Christi, Texas.

Before beginning work in Texas, Defendant attempted to create a new entity, Feasby Lakes Construction & Development, LLC ("the LLC"). He mailed documents, including an Appointment of Agent naming himself as the authorized representative of the LLC, to the Ohio Secretary of State on or about April 9, 2005. However, because Defendant neglected to send the proper filing fee with the documents, they were returned to him for refiling. The LLC was not properly filed until May 3, 2005. [*See* Def. Ex. N].

In the meantime, Defendant began work in Corpus Christi during the second week of April 2005. He began work using leased used equipment from Good Equipment. Gary Thomas ("Thomas"), a Holt-CAT sales representative, had contacted him at the job site regarding any equipment needs. At that time, Defendant told Thomas he needed only two small pieces of equipment. An Application for Financing ("Application"), that he was told was necessary for the leasing of Holt-CAT equipment, was completed and signed by Defendant. The typewritten date next to his signature is April 24, 2005, which was a Sunday. However, Defendant testified that the Application was signed at the Holt-CAT office in Corpus Christi on Monday, April 25, 2005. On that same date, Defendant signed an agreement guaranteeing any obligations owed by the LLC to Holt-CAT.

The circumstances surrounding the completion of the Application for Financing are sharply disputed. Defendant's testimony and that of Holt-CAT's two representatives regarding the Application contain a number of contradictions, which the court attributes in large part to the fact that these events occurred on a normal workday over two and one-half years earlier and are events of which no one actually has a particularly clear recollection.

Defendant testified that, initially, an Application for Financing was faxed to his office in Ohio. That Application is dated April 14, 2005, and according to Defendant, was partially completed at his office by his secretary. [*See* Pl. Ex. 2-O]. Defendant testified, however, that the Application that was ultimately signed was completed in Thomas' office at Holt-CAT and that Thomas not only advised Defendant as to what information Holt-CAT needed but also typed the information onto the form. Specifically at issue in this case are several inaccurate statements on the Application.

First, the Application states that the LLC is the applicant and that it had a business start date of January 1, 1998. Nevertheless, the stated federal identification number of the business is Defendant's social security number. While it is undisputed that the LLC was not yet in existence, according to Defendant, he

3

explained to Thomas that the application for the LLC was in process but that he had not yet received any confirmation that the filing was completed. Defendant testified that Thomas advised him that the LLC should be the applicant since that would be to whom the equipment would be leased and that Defendant's social security number should be used since he had not yet received an identification number for the LLC. Defendant testified that Thomas typed in a business start date of January 1, 1998, after Defendant told him that he had started his excavation business some time in 1998.

The Application also requests certain information regarding the owner, principal, or guarantor, including net worth and annual income. The Application indicates that Defendant's net worth is $600,000 and that his annual income is $222,000. Defendant testified that Thomas told him that gross income was the figure to include on the Application and that he provided to Thomas a copy of Schedule C from his 2004 income tax return showing gross receipts of $222,000 and business income after expenses of $8,900. According to Defendant, Thomas told him that the $222,000 figure was the correct figure to include on the Application. Defendant also testified that Thomas calculated Defendant's net worth simply by adding the $378,000 excavation contract price to Defendant's "gross income"[2] since the excavation contract was what was of interest to Holt-CAT. Although at the time of signing the Application, Defendant testified that he believed that it accurately reflected the information sought, he now agrees that his actual net worth was not correctly reported on the Application. According to Defendant, in April 2005, he owned assets totaling approximately $312,000 and had liabilities totaling approximately $110,000.[3] [*See* Def. Ex. 2-N]. His actual net worth then was approximately $200,000.

Thomas' deposition testimony differs dramatically. According to Thomas, Defendant did not give him a copy of his 2004 Schedule C, and Thomas did not type the information on the application or assist Defendant in any manner in completing the Application. Although he testified that he never even saw the completed Application until January 2008, after commencement of this adversary proceeding, [Pl. Ex. 4, p. 11], his testimony is contradicted by Debra Leal (fka Debra Perez), Holt-CAT's Senior Credit and Collections Representative. Leal testified in her deposition that she received the Application from Thomas

---

[2] Defendant incorrectly refers to gross receipts of $222,000 as "gross income." His 2004 Schedule C reports gross receipts of $222,342 and gross income of $93,608.

[3] Defendant lists the $378,000 Corpus Christi contract and another $61,000 contract as assets, which amounts are not included in the figures above. However, those amounts reflect the contract price before expenses and not the profit that he anticipated receiving on those contracts.

4

for credit approval in April 2005. [Pl. Ex. 3, p. 24]. However, her testimony also contradicts Defendant's testimony that Thomas typed the Application in his office in Texas. She testified that the Holt-CAT office did not have a typewriter in April 2005. [*Id*., p. 9-10]. Defendant, on the other hand, clearly had a typewriter available to him as he testified at his 2004 examination that the incomplete April 14, 2005, Application for Financing was filled out in his office in Ohio. [Pl. Ex. 2, p. 53, 22-23]. The portion of the April 14 Application completed by Defendant's secretary is typed. [*Id.*, Ex. O]. And the typewritten letters appear very similar to those on the completed April 24 Application.

Although there are discrepancies in both Thomas' and Defendant's testimony regarding the completion of the Application, and regardless of who actually typed the information on the Application, the court believes that Thomas at least advised Defendant as to how the Application should be completed and, specifically, what should be included as annual income and net worth. Defendant has only a high school education. After observing Defendant, listening to his testimony at trial and reviewing his Rule 2004 examination testimony, the court is not convinced that Defendant understood the concept of "net worth," that he would or should have known that the Application's reference to "annual income" was a reference to annual net income, or that he knows the difference between "gross income" and "gross receipts." The ten-day time period between receiving the initial Application that was started by his secretary in mid-April and signing the Application on or about April 24, 2005, supports Defendant's testimony that he had questions about how to complete the Application. The court credits Defendant's testimony that he had not met Leal at that time and thought Thomas was Holt-CAT's credit department. It follows then that he would have contacted Thomas for assistance in completing the Application, which, according to Leal, Thomas provided to her. The court also credits Defendant's testimony that Thomas advised, or at least that he understood Thomas to have advised, that the $378,000 value of the excavation contract was part of Defendant's net worth for purposes of Holt-CAT's credit determination in leasing equipment to be used for that excavation project.

Defendant's Application was ultimately approved on April 25, 2005, by Leal. [Pl. Ex. 3-1, p.2]. Before approving the Application, Leal obtained a report from Dun & Bradstreet and an Experian credit report on Defendant, and also called two references provided by Defendant. Leal testified that the credit report and references were favorable. Although she also testified that there was nothing in the Dun & Bradstreet report that was out of the ordinary, the report does not show the business as being an LLC and indicates that the information available did not permit classification within the Dun & Bradstreet rating

5

system. According to Leal, the account was initially set up with a credit limit of $5,000. Thomas explained to Defendant that the $5,000 credit limit would be reassessed in thirty days. Leal testified that before each piece of equipment was delivered to the Feasby Lakes Construction job site, a release number had to be provided by the Holt-CAT credit department.

Initially, Defendant leased only two small pieces of equipment from Holt-CAT that were delivered to the job site the day after he signed the Agreement. According to Defendant, that equipment was available through Holt-CAT's small equipment rental store and could have been rented using a credit card rather than filling out the Application. Ultimately, however, Defendant experienced problems with the equipment leased from Good Equipment. During the third week of June 2005, as a result of a dispute that arose over repair costs of the equipment, Good Equipment removed all of its equipment from the job site.

By that time, Feasby Lakes Construction had already fallen behind in payments on the small equipment leased from Holt-CAT due to slow payments by the developer.[4] According to Defendant, he was never current on his obligations to Holt-CAT. Nevertheless, after the Good Equipment was removed, Holt-CAT leased Feasby Lakes Construction additional equipment, including two large scrapers. Defendant spoke with both Thomas and Leal at that time regarding his difficulty timely paying Holt-CAT due to the problems he was having with the developer paying him in a timely manner. Rhonda Feasby, who is now Defendant's wife and was then his girlfriend, also met with Leal as early as July 1, 2005, and a number of times thereafter, to discuss the payment issues that had arisen due to nonpayment or slow payment by the developer. She testified that Leal assured her that it was not uncommon for contractors not to be paid timely by the developer and that she would use the Texas Property Code to protect Holt-CAT (i.e. by filing a mechanic's lien).

According to Leal, Holt-CAT could have removed its equipment from the Feasby Lakes Construction job site at any time due to nonpayment. Nevertheless it did not do so. Rather, it continued to lease the equipment even after Leal had issued a lien notice and notwithstanding the fact that it had not been paid for the July or August rentals and was not paid in full for June rentals until mid-August.

In the end, Defendant decided to, and did, stop performance under his excavation contract and left

---

[4] Although a separate lease agreement was completed for each piece of equipment leased, only two of those agreements are part of the record in this case. [*See* Pl. Exs. 3 & 4]. Both of those agreements state that Feasby Lakes Construction, not the LLC, is the lessee. [*Id.*]. Both of those agreements were executed before the LLC was properly filed with the Ohio Secretary of State.

the job site on September 8, 2005. He notified Holt-CAT of this and asked to have the equipment scheduled for pick-up as soon as possible. The debt that Holt-CAT claims is owed by Defendant in the amount of $110,983.17 was incurred during July through September 2005. [Pl. Ex. 3-5].

## LAW AND ANALYSIS

Holt-CAT seeks a determination that the debt owed to it by Defendant, as guarantor of the obligations of the LLC, is nondischargeable under 11 U.S.C. § 523(a)(2)(B).[5] A creditor must prove exceptions to dischargeability for individual debts under § 523(a), including the exception for fraud, by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 291 (1991). Exceptions to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. *Rembert v. AT&T Universal Card Servs. (In re Rembert),* 141 F.3d 277, 281 (6th Cir. 1998).

Section 523(a)(2)(B) provides as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt –
. . . .
    (2) for money . . . to the extent obtained by –
. . . .
        (B) use of a statement in writing–
            (i) that is materially false;
            (ii) respecting the debtor's or an insider's financial condition;
            (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
            (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). As under § 523(a)(2)(A), a debtor's intent to deceive a creditor under § 523(a)(2)(B) is measured by a subjective standard and must be ascertained by the totality of the circumstances of the case at hand. *Rembert*, 141 F.3d 277, 281-82 (6th Cir. 1998) (§ 523(a)(2)(A) case); *Ins. Co. of North America v. Cohn (In re Cohn)*, 54 F.3d 1108, 1118-19 (3rd Cir. 1995)(§ 523(a)(2)(B) case).

In support of its claim, Holt-CAT offers the Application for Financing completed with information supplied by Defendant. Although the Application contains a false representation that the LLC existed at

---

[5] Defaults in the equipment lease agreements are the basis for the obligation owed by Defendant. As noted above, in the only lease agreements before the court, the LLC does not appear to be the lessee. Nevertheless, Defendant admits that credit was extended to the LLC by Holt-CAT and that the LLC defaulted on its obligations to Holt-CAT. [*See* Doc. #1, Complaint, ¶ 8; Doc. #7, Answer, ¶ 6].

the time the Application was completed, that representation is not a statement "respecting the debtor's or an insider's financial condition" as it says nothing about Defendant's or the LLC's financial responsibility or creditworthiness. And there is no evidence that this representation was made by Defendant with the intent to deceive or that Holt-CAT relied on the accuracy of this statement in approving the credit application. The court credits Defendant's testimony that he specifically told Thomas, Holt-CAT's sales representative, that the application for the LLC was in process but that he had not yet received any confirmation that the filing was completed. The LLC was stated as the applicant at Thomas' direction, and Defendant's social security number, not the LLC's federal tax identification number, was included on the Application. That Defendant conferred with Thomas on this matter is supported by the fact that Defendant left blank on the partially completed April 14 Application lines requesting "Applicant Name" and "Federal ID Number." Moreover, the Dun & Bradstreet report did not indicate the existence of the LLC and the two lease agreements before the court that were executed before the LLC was properly filed with the Ohio Secretary of State do not name the LLC as the lessee.

More problematic are the statements of Defendant's net worth and annual income contained in the Application. While certainly inaccurate, and notwithstanding that the court is troubled by the specificity of Defendant's testimony at trial regarding the assertion that Thomas typed the Application, for the following reasons, the court does not believe the statements were made by Defendant with the intent to deceive Holt-CAT.

At the time the Application was completed, Defendant only anticipated leasing a couple of small pieces of equipment. He was not anticipating incurring a large debt and had no motive to exaggerate his financial status. Only later did the larger, more expensive equipment come into the picture. There is no evidence that at the end of April, after Defendant had been on the job for only two weeks, he had any indication that he was going to have the dispute with Good Equipment that later led to leasing the larger equipment from Holt-CAT. Leal testified that she called two references provided by Defendant, one of which was in fact Good Equipment, [*see* Pl. Ex. 1], and that they were favorable. [Pl. Ex. 3, p.22]. Nor is there any evidence that Defendant had any indication at that time that he would have problems receiving payments from the developer under the excavation contract.

Defendant had never before undertaken a large project such as the Texas ski lake excavation project. He had no formal education or training after high school and there is no evidence that he had any experience or knowledge regarding the meaning of "net worth." As discussed above, the court finds Defendant's

8

testimony credible that he sought Thomas' assistance in completing the Application, that Thomas advised him regarding the information requested in the Application that was relevant to Holt-CAT and that Thomas advised him that gross income was the figure that should be included in the Application. The Application did not otherwise specify as to gross or net income. And Defendant did not simply pull figures out of the air. While it is not clear to the court that Thomas specifically told Defendant to include the $222,000 figure as annual income, the court finds it more likely than not that Defendant believed the $222,000 figure on his 2004 Schedule C constituted gross income and, therefore, that it was the correct figure to report as income on the Application.

The $600,000 net worth figure also has some factual basis, albeit an erroneous basis that the court believes demonstrates Defendant's lack of understanding of the "net worth' concept rather than an intent to deceive. Defendant's net worth of $600,000 was calculated by adding his then current excavation contract price of $378,000 to his business revenue from 2004. The court believes that Defendant's discussions with Thomas led Defendant to believe that the value of the excavation contract, as well as the value of his other contracts represented by his 2004 business revenue of $222,000 constituted his net worth for purposes of Holt-CAT's credit determination.

For all of these reasons, the court concludes that, in signing and submitting the Application, Defendant relied on the instruction and assistance of Holt-CAT's sales representative and did so without any intent to deceive Holt-CAT.

## **CONCLUSION**

Finding that Holt-CAT has failed to prove an intent to deceive by a preponderance of the evidence and, thus, has failed to prove each element of its claim under 11 U.S.C § 523(a)(2)(B), the court further finds that debt owed to Holt-CAT by Defendant is dischargeable. The court will separately enter judgment in Defendant's favor in accordance with this Memorandum of Decision.